IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **FIRST COMMONWEALTH BANK,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. **3:22-cv-374-L** |
| § | |
| **AUTO RESOURCE OF TEXAS LLC,** § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion for Default Judgment (Doc. 8), filed April 26, 2022. After careful consideration of the Motion, pleadings, record, evidence, and applicable law, the court **grants** the Motion (Doc. 8).

**I.   Background**

On February 15, 2022, First Commonwealth Bank ("Plaintiff" or "First Commonwealth") filed its Complaint (Doc. 1) seeking relief against Defendant Auto Resource of Texas, LLC ("Defendant" or "Auto Resource") for its breach of the promissory note ("Note"). Doc. 1 at 3-4. Defendant is a Texas LLC whose only members are Johnathan L. Ramirez and Joy A. Ramirez ("Guarantors"), who executed guaranty agreements in connection with the Note.* *Id*. at 1. The Note was also secured by a security agreement, which gave First Commonwealth a security interest in Defendant's equipment, fixtures, and inventory. *Id*. at 2. First Commonwealth alleges that "Auto Resource breached its duties under the Note by, among other things, failing to repay the

---

* Plaintiff does not seek to enforce its rights under the guaranties and related loan documents against the Guarantors because they filed for Chapter 7 Bankruptcy protection in the United States Bankruptcy Court for the Northern District of Texas, Case No. 21-42897-mxm7. Doc. 1 at 2-3.

**Memorandum Opinion and Order – Page 1**

indebtedness due. Despite its obligations under the note, [Defendant] failed to make the required payments," and now owes a balance of $336,758.10, excluding certain costs, expenses, fees, and interest. *Id*. at 2-3. First Commonwealth asserted a claim for breach of promissory note, and in addition, requested an award of attorney's fees, costs, prejudgment interest, and postjudgment interest. *Id*. at 3-4.

Defendant was served with process through its registered agent Johnathan L. Ramirez on March 1, 2022. Doc. 5 at 2. Accordingly, its time to file an answer or otherwise respond to First Commonwealth's Complaint was March 22, 2022. After default was entered against Defendant on March 24, 2022, Plaintiff moved for entry of a default judgment on its claim against Defendant for nonpayment of the outstanding loan balance under the Note, and filed this Motion for Default Judgment on April 26, 2022. Doc. 8.

## II.     Analysis

### A.  Legal Standard – Motion for Default Judgment

A party is entitled to entry of a default by the clerk of the court if the opposing party fails to plead or otherwise defend as required by law. Fed. R. Civ. P. 55(a). Under Rule 55(a), a default must be entered before the court may enter a default judgment. *Id*.; *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). The clerk of court has entered a default against Defendant (Doc. 7). Based upon the pleadings and information in the record, the court finds that Defendant is not a minor, incompetent, or member of the United States military. Defendant, by failing to answer or otherwise respond to Plaintiff's Complaint, has admitted the well-pleaded allegations of the Complaint and is precluded from contesting the established facts on appeal. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citations omitted). Stated

differently, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (citation omitted). Accordingly, Defendant may not contest the "sufficiency of the evidence" on appeal but "is entitled to contest the sufficiency of the complaint and its allegations to support the judgment." *Id*. Based on the well-pleaded allegations in Plaintiff's Complaint, which the court accepts as true, and the record in this action, the court determines for these reasons and the reasons herein explained that Defendant is in default, and that Plaintiff is entitled to a default judgment on its claim for breach of contract.

### B. Damages

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (citations omitted). In the context of a default judgment, "[d]amages may not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); however, "[w]he[n] the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents and where a hearing would not be beneficial, a hearing in unnecessary." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 2009).

In its Complaint, First Commonwealth asserts that it and Defendant entered into a business loan for a principal amount of $362,000, evidenced in part by the Note. Doc. 1 at 2. The Note provides that Defendant must make monthly principal and interest payments, and a default event occurs when Defendant "does not make a payment when due under this Note." *Id*. at 3, quoting the Note. First Commonwealth alleges that Defendant "breached its duties under the Note by,

among other things, failing to repay the indebtedness due." *Id*. For its breach of promissory note claim, First Commonwealth seeks to recover $340,348.41 for actual costs incurred as of April 14, 2022, plus prejudgment and postjudgment interest based on the contractual per diem rate of $56.22 from April 14, 2022, until paid in full. Doc. 8 at 4-5.

First Commonwealth's breach of promissory note claim is essentially a breach of contract claim. To prevail on a breach of contract claim, First Commonwealth must sufficiently plead allegations from which the court can reasonably infer the following elements: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167, 170 (5th Cir. 2018) (internal quotations and citations omitted). The court determines that First Commonwealth has sufficiently pleaded each of the elements of its claims. Additionally, as Defendant has failed to file an answer in this action or otherwise appear, it has accepted these well-pleaded allegations as true. The court, therefore, **grants** First Commonwealth's Motion because Plaintiff's pleadings and evidence sufficiently show that Defendant executed the Note in question; that Plaintiff is the current holder of the Note; and that the Note is in default.

First Commonwealth's pleadings likewise establish that Defendant failed to submit payment as required by the Note (*see* Doc. 8-1at 2-3); that Defendant breached its obligations under the promissory note by failing to repay the indebtedness due; and that as a result of Defendant's failure to make the Note payments, Plaintiff has suffered damages in the amount of $340,348.41. Defendant is, therefore, liable for breach of the Note, and the court finds that the amount requested by Plaintiff ($340,348.41) is supported by the evidence. Because the amount of

damages can be determined with certainty by reference to the pleadings and supporting documents, the court concludes a hearing is unnecessary. Accordingly, Plaintiff is entitled to recover from Defendant **$340,348.41** in actual damages.

### C.  Attorney's Fees and Costs

Plaintiff seeks $25,820.00 in reasonable attorney's fees as well as $2,999.81 in costs related to enforcing its rights under the Note and security agreement. As the prevailing party on its breach of contract claim, Plaintiff is entitled to recover reasonable and necessary attorney's fees. Tex. Civ. Prac. & Rem. Code § 38.001(8); *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000) ("Under Texas law, when a prevailing party in a breach of contract suit seeks attorneys' fees, an award of reasonable fees is mandatory under Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)."). The Note also provides that Plaintiff is entitled to attorney's fees related to expenses incurred "to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of Collateral." Doc. 8-2 at 2.

In support of its request for attorney's fees, Plaintiff submits the affidavit of Sean M. Affleck. *See* Doc. 8-3. According to Mr. Affleck's affidavit and the exhibits attached to it, he, along with David M. Clem, both of the law firm Johnston Clem Gifford PLLC, represented Plaintiff in connection with this civil action. According to the affidavit, Mr. Affleck has been licensed in State of Texas to practice law since 2017. Although not stated in Mr. Affleck's affidavit, the court takes judicial notice pursuant to Federal Rule of Evidence 201 that Mr. Affleck has been licensed to practice law in the State of Texas since November 3, 2017. *See* www.TexasBar.com. According to the affidavit, Mr. Clem has been licensed in State of Texas to practice law since 2005. Although not stated in Mr. Affleck's affidavit, the court takes judicial

notice pursuant to Federal Rule of Evidence 201 that Mr. Clem has been licensed to practice law in the State of Texas since November 4, 2005. *See* www.TexasBar.com. According to Mr. Affleck's affidavit, his hourly billable rate is $350 per hour, Mr. Clem's billable rate is $425 per hour, and the rate of the paralegal assisting them is $200 per hour. Mr. Affleck asserts, and the court agrees, that the hourly rates for the services performed in this case are reasonable, as the hourly rates are within the range of the usual and customary rate charged by attorneys and paralegals in the Dallas legal community with similar ability, competence, experience, and skill as that of Plaintiff's attorneys and paralegal for the services performed in cases of this nature. Based on its extensive experience in awarding attorney's fees in numerous prior cases over the years, the court concludes that the rates charged are below the customary and usual rate charged by attorneys in the Dallas legal community with similar ability, competence, experience, and skill as that of Plaintiff's attorneys for the services performed in cases of this nature.

The invoices filed in support of Mr. Affleck's request show that the attorneys and paralegal expended a total of 87.3 hours working on this case, including efforts to collect amounts due in pre-litigation enforcement of the Security Agreement and Plaintiff's counsel successful prosecution of this case. The party seeking attorney's fees must present adequate documentation to the court for the court to determine that the number of hours expended in a case is reasonable. *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996) (citation omitted). Plaintiffs are also charged with proving that counsel exercised billing judgment. *Id*. Billing judgment refers to the practice of law firms to write off unproductive, excessive, or duplicative hours. *Id*. In the absence of billing judgment, the proper remedy is not "a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing

judgment." *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006) (per curiam).

Here, the records do not reflect the exercise of billing judgment. Mr. Affleck does not specifically state in his affidavit that counsel exercised billing judgment, and the court's examination of the invoices reveals five entries totally 3.60 hours for which there was "no charge" for the services rendered. *See* Doc 8-4. In light of the large amount of attorney time expended on this matter, 3.60 hours of uncharged time does not establish that Plaintiff's counsel exercised billing judgment. Further, the invoices are "block billed," which prevent the court from reviewing the time each attorney spent on each of the activities billed. *Barrow v. Greenvill Indep. Sch. Dist.*, Civ. Action No. 3:00-CV-0913-D, 2005 WL 6789456, at *5-6 (N.D. Tex. Dec. 20, 2005). In light of these two failures by Plaintiff, the court finds that a fifteen percent reduction of attorney fees is reasonable. *See Walker*, 99 F.3d at 770. The court results a reduction of $3,873.00, and determines that First Commonwealth is entitled to **$21,947.00** in reasonable attorney's fees.

Mr. Affleck's affidavit also requests $2,999.81 in Plaintiff's expenses incurred enforcing its rights in this matter under the Note and related security agreement, including court filing fees, process server, appraisal and storage of collateral, and related lien searches. Doc. 8-3 at 4. The court finds these costs incurred are reasonable, and accordingly, First Commonwealth is entitled to an award of $21,947.00 in attorney's fees and $2,999.81 in costs and expenses, which is the amount requested, for a total **$24,946.81** in attorney's fees and costs.

First Commonwealth also requests a conditional award of attorney's fees in the following amounts:

(a) $3,500 in reasonable attorneys' fees in the event a hearing is held on this motion or any further prosecution of this motion is required;

**Memorandum Opinion and Order – Page 7**

  (b) $3,500 in reasonable attorneys' fees in the event a motion to vacate is filed; and

  (c) $10,000 in reasonable attorneys' fees if an appeal is filed.

Doc. 1 at 6. Texas law supports a conditional award for appellate fees, but the award must be supported by evidence of the fees' reasonableness. *See Passmore v. Baylor Health Care Sys.*, No. 3:13-CV-5016-P, 2016 WL 8578058, at *2 (N.D. Tex. Jan. 5, 2016) ("[A] trial court's award of conditional appellate attorneys' fees must be supported by evidence of their reasonableness."). While Plaintiff's counsel provides an estimate of fees, he does not provide a basis for the amounts asserted, and the estimates are speculative. Thus, First Commonwealth has failed to demonstrate a reasonable basis for the court to award $10,000 in appellate fees. Additionally, it provides no legal basis as to why it is entitled to a conditional award for a possible hearing on this Motion or in the event a motion to vacate is filed. Moreover, if additional fees are incurred because of a motion to vacate, a subsequent hearing, or an appeal, the issue of attorney's fees can be addressed at that time. For these reasons, the court **denies** First Commonwealth's request for conditional attorney's fees.

  **D.  Prejudgment and Postjudgment Interest**

  Prejudgment interest rates are governed by state law in diversity cases. *Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002). Because this is a diversity case in which Texas law applies, Texas law governs prejudgment interest. *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 412 (5th Cir. 2011). "The Texas Supreme Court has recognized two separate bases for the award of prejudgment interest: (1) an enabling statute; and (2) general principles of equity." *International Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 499 (5th Cir. 2002) (quoting *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962

**Memorandum Opinion and Order – Page 8**

S.W.2d 507, 528 (Tex. 1998)). "[S]tatutory prejudgment interest applies only to judgments in wrongful death, personal injury, property damage, and condemnation cases." *International Turbine Servs., Inc.*, 278 F.3d at 499. Because the claims in this case do not fall within the statutory provisions, prejudgment interest in this case is governed by Texas common law. *Id*. "Texas common law allows prejudgment interest to accrue at the same rate as postjudgment interest on damages awarded for breach of contract." *Id*. When, as here, an interest rate is not specified in the parties' contract, prejudgment interest is calculated based on the statutory rate for postjudgment interest provided in section 304.003 of the Texas Finance Code. *Id*. Section 304.003 of the Texas Finance Code provides, in pertinent part, that the postjudgment interest rate is "(1) the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation"; [or] (2) "five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System . . . is less than five percent[.]" Tex. Fin. Code Ann. § 304.003(c)(2). The current prime rate is 7.00%, which is greater than five percent. Accordingly, the prejudgment interest rate that the court will apply is 7.00% per annum.

The Texas Finance Code not only sets the rate of prejudgment interest, but also states that prejudgment interest begins to accrue on the earlier of (1) 180 days after the date the defendant received written notice of the claim or (2) the date suit is filed, and "end[s] on the day preceding the date judgment is rendered." Tex. Fin. Code Ann. § 304.104. Prejudgment interest accrues only on the damages awarded and not on Plaintiff's award for attorney's fees. *See Cushman & Wakefield, Inc. v. Fletcher*, 915 S.W.2d 538, 547 (Tex. App.—Dallas 1995, writ denied) (holding prejudgment interest is not recoverable on attorney's fees awarded).

Here, Plaintiff filed this lawsuit on February 15, 2022. Thus, the court will calculate prejudgment interest on the amount owed by Defendant for the outstanding Note balance at a rate of 7.00% from February 15, 2022 (the date the suit was filed), to November 15, 2022, and award Plaintiff prejudgment interest in the amount of **$17,819.34**.

Finally, federal courts award postjudgment interest pursuant to 28 U.S.C. § 1961. The statute grants interest "from the date of the entry of the judgment" at a rate "equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). Postjudgment interest compounds annually and is "computed daily to the date of payment." *Id.* § 1961(b). The principal for calculating post-judgment interest is "the entire amount of the final judgment," including attorney's fees, costs, and prejudgment interest. *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991). The postjudgment interest amount for the calendar week preceding the date of judgment is 4.74 percent. United States District Court for the Northern District of Texas, Publications - Post Judgment Rate (November 10, 2022), http://www.txnd.uscourts.gov/publications/pjrate.html (reporting that the current postjudgment interest rate from November 7, 2022, to November 13, 2022 is 4.74 percent). Postjudgment interest will apply to the total amount of the judgment and will be calculated from the date judgment is entered at the applicable federal rate of 4.74% until it is paid in full.

### III.   Conclusion

For the reasons explained, Plaintiff's Motion for Default Judgment (Doc. 8) is **granted**. Accordingly, the court will enter a default judgment in favor of Plaintiff in the amount of **$340,348.41** in actual damages, plus **$17,819.34** in prejudgment interest on this amount

**Memorandum Opinion and Order – Page 10**

calculated at a rate of **7.00%** per annum from February 15, 2022, to November 15, 2022; reasonable attorney's fees and costs in the amount of **$24,946.81**, and postjudgment interest on the entire amount of the judgment **($383,114.56)** at the current federal rate of **4.74%** per annum from the date of judgment until it is paid in full. The court also taxes all reasonable and allowable costs against Defendant. All other relief not expressly granted is **denied.** In accordance with Rule 58 of the Federal Rules of Civil Procedure, a default judgment will issue by separate document.

    **It is so ordered** this 16th day of November, 2022.

                              Sam A. Lindsay
                              United States District Judge